UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PINNACLE MGMT GRP, INC.,

        Plaintiff,

vs.

FIRST CHOICE HEALTHCARE SOLUTIONS, INC.,

        Defendant.

**COMPLAINT**

Civil Action No.:

Plaintiff Pinnacle Mgmt Grp, Inc. ("Pinnacle"), by and through its undersigned counsel, as and for its Complaint against defendant First Choice Healthcare Solutions, Inc. ("FCHS"), hereby alleges as follows:

**NATURE OF THE ACTION**

1.  This action arises out of FCHS's improper attempt to block Pinnacle from reselling certain securities FCHS issued to Pinnacle pursuant to the parties' written consulting agreement.

2.  Pursuant to the plain and unambiguous terms of that agreement, Pinnacle received shares of common stock of FCHS as an inducement to enter into the contract and perform certain consulting services.

3.  Upon their issuance, those shares constituted vested compensation fully earned by Pinnacle. Pursuant to controlling securities laws, Pinnacle was free to resell the shares following a six-month holding period which expired in December 2016.

4.  In clear violation of its obligations under the agreement, FCHS has issued a stop transfer order that improperly blocks Pinnacle from reselling the shares and realizing the economic benefit of its fully vested compensation.

5. Despite due demand, FCHS has refused to lift the stop transfer order.

6. Pinnacle brings this action to obtain a judicial declaration of its rights and FCHS's obligations under the operative agreement.

## THE PARTIES

7. Pinnacle is a New Jersey corporation maintaining its principal place of business in New York, New York.  At all relevant times, Pinnacle was engaged in the business of providing business consulting services.

8. FCHS is a publicly traded Delaware corporation maintaining its principal place of business in Melbourne, Florida.  At all relevant times, FCHS operated a network of medical centers.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1).  There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District. Further, the agreement out of which this dispute arises provides that the parties "consent and submit to the exclusive jurisdiction of the respective federal and state courts in and of the State of New York located in New York County."

**FACTUAL BACKGROUND**

**The Agreement**

11.     Pinnacle and FCHS entered into a consulting agreement (the "Agreement") dated effective June 1, 2016.  A true and correct copy of the Agreement is attached hereto as Exhibit A.

12.     Pursuant to the Agreement, Pinnacle was to provide FCHS's executives and key employees with advice regarding their financial affairs.  See Agreement, §1A.

13.     In addition, Pinnacle agreed to analyze FCHS's business operations and financial performance and develop a strategy to meet its working capital and capital resource needs.  Id., §1B.

14.     Further, Pinnacle was retained to advise FCHS with respect to future business transactions.  Id.

15.     Pinnacle also agreed to assist FCHS in the development of new business relationships and evaluating new business proposals.  Id., §1C.

16.     As compensation for its services, Pinnacle was to receive a monthly management fee of $2,500, commencing on the effective date of the Agreement.  Id., §2, Ex. A.

17.     There also was an equity component to Pinnacle's compensation.  Id. Specifically, the Agreement provides:

> As consideration for the Consulting and Advisory Services to be performed hereunder, Consultant shall receive up to 400,000 shares of FCHS Common Stock, to be issued to Consultant at the rate of 100,000 shares upon execution of this Agreement and then 50,000 shares per month thereafter, unless the Company has provided written notice of termination, in which case no further shares will be issued to Consultant.

Id.

3

18. Pursuant to the Agreement, FCHS was free to terminate the contract upon written notice "if any of the services are performed or are being performed hereunder in an unsatisfactory manner, as determined by FCHS in its sole discretion[.]" Id., §4.

19. Notwithstanding any such termination, the Agreement provided that "all vested compensation payable to Consultant through the date of termination <u>shall be deemed earned and payable</u> to Consultant." Id. (emphasis supplied).

20. The Agreement provides that its terms "shall be interpreted and construed in accordance with the laws of the State of New York." Id., §5.

21. The Agreement further provides that the parties thereto "consent and submit to the exclusive jurisdiction of the respective federal and state courts in and of the State of New York located in New York County." Id.

22. The Agreement provides for the recovery of attorneys' fees in the event litigation is commenced to enforce its provisions. Specifically, the parties agreed:

> If any action or proceeding is brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover as an element of its costs, and not its damages, reasonable attorneys' fees to be fixed by the court.

Id., §6.9.

### FCHS Issues to Pinnacle the Initial Tranche of 100,000 Shares of Common Stock

23. Pinnacle began providing services to FCHS under the Agreement in or about June 2016.

24. FCHS commenced payments to Pinnacle of the monthly management fee of $2,500.

25. Further, upon the Agreement's execution, FCHS issued to Pinnacle the initial tranche of 100,000 shares of FCHS common stock (the "Common Stock").

26. Specifically, Pinnacle was issued Certificate No. 620-5 (the "Certificate"), dated June 6, 2016 and representing 100,000 shares of Common Stock (the "Shares").  A copy of the Certificate is attached hereto as Exhibit B.

27. At all relevant times, a register for the class of Common Stock was maintained by FCHS's transfer agent, Corporate Stock Transfer, Inc. ("CST").

28. The Certificate was issued bearing the following restricted legend (the "Securities Act Legend"), as required under the Securities Act of 1933, as amended (the "Securities Act") and agreed to by Pinnacle:

> THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED ("ACT") OR ANY UNITED STATES' SECURITIES LAWS ("STATE ACTS") AND ARE RESTRICTED SECURITIES.  THESE RESTRICTED SECURITIES MUST BE HELD INDEFINITELY UNLESS THEY ARE SUBSEQUENTLY REGISTERED UNDER THE ACT AND STATE ACTS AND/OR EXEMPTION FROM SUCH REGISTRATION(S) IS (ARE) AVAILABLE.  THE SECURITIES REPRESENTED BY THIS CERTIFICATE MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED FOR A PERIOD OF SIX MONTHS FROM THE DATE OF ISSUANCE AND THEREAFTER, (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OF APPLICABLE STATE SECURITIES LAWS OR (B) AN OPINION LETTER OF COUNSEL, IN A GENERALLY ACCEPTED FORM, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR APPLICABLE STATE SECURITIES LAWS OR (II) UNLESS SOLD PURSUANT TO RULE 144 UNDER SAID ACT.

29. The Certificate also bears the following additional legend, which reflects a restriction neither referenced in the Agreement nor otherwise agreed to by Pinnacle (the "Additional Legend"):

THE SALE OF THE SHARES ISSUABLE UPON EXERCISE OF THE FCHS OPTIONS SHALL BE LIMITED TO NOT EXCEED AN AGGREGATE OF TEN (10%) PERCENT PER MONTH

30. Upon information and belief, the Additional Legend was added to the Certificate in error.  No options to purchase Common Stock were issued pursuant to the Consulting Agreement.  Moreover, the Shares were not issued upon the exercise of any options to purchase Common Stock.  Consequently, the Additional Legend does not apply to the Shares.

31. As the Shares were not issued pursuant to a registration statement under the Securities Act, the Shares were "restricted securities" (as defined in Rule 144 of the Securities Act) ("Rule 144") and thus subject to the restrictions on transfer described in the Securities Act Legend.

32. Under Rule 144, a non-affiliate of FCHS could freely resell securities acquired from FCHS only after a six-month holding period.

33. The resale of the Shares was not registered on a Registration Statement and Pinnacle is not an "affiliate" of FCHS (as defined in Rule 144).  Pinnacle thus was required to wait at least six months to resell the Shares in reliance on the exemption from registration provided by Rule 144.

**The Improper Stop Transfer Order**

34. In or about December 2016, FCHS ceased paying the monthly management fee due under the Agreement.  At or about that time, a dispute arose between Pinnacle and FCHS with respect to their respective rights and obligations under the Agreement.

35. Other than the initial tranche of 100,000 shares issued for Pinnacle's benefit upon the execution of the Agreement, FCHS did not issue to Pinnacle any other shares of Common Stock pursuant to the Agreement.

36. Significantly, although FCHS maintained that Pinnacle failed to perform its obligations under the Agreement, to this date FCHS has never issued to Pinnacle a written notice of termination.

37. As noted above, the Agreement expressly provides that all vested compensation payable to Pinnacle up to the date of the Agreement's termination "shall be deemed earned and payable to Consultant."

38. At some point during the course of the parties' dispute and without prior notice to Pinnacle, FCHS delivered to its transfer agent, CST, a stop transfer order (the "Stop Transfer Order") on the Shares.

39. Through the Stop Transfer Order, FCHS purported to preclude CST from facilitating the removal from the Certificate of the Securities Act Legend or the Additional Legend.

40. Further, through the Stop Transfer Order, FCHS purported to prohibit any resale, transfer or other disposition of the Shares by Pinnacle.

41. The Shares have been eligible to be resold by Pinnacle pursuant to Rule 144 since the expiration of the six-month holding period on or about December 6, 2016.

42. Subsequent to the expiration of the holding period, Pinnacle sought to resell the Shares. By doing so, Pinnacle hoped to monetize the Shares and recover their market value.

43. When Pinnacle contacted CST in an effort to remove the restrictive legends and to effect the resale of the Shares in reliance on the exemption from registration provided by Rule 144, CST advised that it could not facilitate that transaction due to the Stop Transfer Order.

44. CST's position shocked Pinnacle. Pinnacle had no knowledge of the Stop Transfer Order and was aware of no basis for FCHS's attempt to preclude it from realizing the

value of the compensation it had already earned by virtue of the unambiguous terms of the Agreement.

45. When Pinnacle demanded that FCHS lift the Stop Transfer Order and take all other steps necessary to facilitate the resale of the Shares, FCHS refused to do so.

46. Pursuant to the plain language of the Agreement, the Certificate and Rule 144, by December 2016, Pinnacle was (and remains) contractually entitled to resell the Shares representing its bargained-for consideration under the Agreement.

47. Pursuant to the Agreement, the Shares constitute vested compensation fully earned and payable to Pinnacle.

48. FCHS's conduct in issuing the Stop Transfer Order and blocking Pinnacle's resale of the Shares is wrongful and directly contrary to the terms of the Agreement.

49. During the time that FCHS has improperly blocked Pinnacle from reselling the 100,000 Shares, the market value of those shares has reached $1.75 per share.

50. CST has advised Pinnacle that, absent a court order clarifying Pinnacle's rights with respect to the Shares, CST is unable to facilitate the resale of the Shares in light of the Stop Transfer Order.

51. Pinnacle has been damaged and, absent the declaratory relief it seeks here, will continue to be damaged as a result of its inability to benefit from the resale of the Shares it earned as an inducement to enter into and perform under the Agreement.

## COUNT I

### (Declaratory Judgment)

52. Pinnacle incorporates and realleges each of the allegations set forth above in paragraphs 1 through 51 as if fully set forth herein.

53. This claim for relief arises under the Declaratory Judgment Act, 28 U.S.C. §2201.

54. An actual controversy exists between the parties.

55. Pinnacle maintains that it is contractually entitled to the benefit of the initial distribution of Shares and, therefore, the Stop Transfer Order is contrary to the letter and spirit of the Agreement and improper as a matter of law.

56. FCHS apparently maintains that Pinnacle's failure to adequately perform under the Agreement justifies the Stop Transfer Order.

57. The pendency of this actual controversy has caused and will continue to cause harm to Pinnacle in that, to date, it has been wrongfully blocked from enjoying the benefit of the value of the Shares issued to it pursuant to the Agreement.

58. Based upon the foregoing, Pinnacle seeks a judicial declaration that the Stop Transfer Order is contrary to the terms of the Agreement and thus improper; that the Additional Legend is improper; and that Pinnacle is entitled to immediately resell or otherwise dispose of the Shares at issue pursuant to Rule 144.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Pinnacle Mgmt Grp, Inc. respectfully demands judgment against defendant First Choice Healthcare Solutions, Inc. as follows:

    A.    A judicial declaration that:

        i.    the Stop Transfer Order is improper and contrary to the terms of the Agreement;

        ii.        Pinnacle is entitled under the Agreement to the immediate rescission of the Stop Transfer Order;

        iii.       Pinnacle is entitled under the Agreement to immediately resell or otherwise dispose of the Shares; and

        iv.       the Additional Legend is inapplicable to the Shares and CST, the transfer agent, should remove the Additional Legend from the Certificate.

B.        Pursuant to Section 6.9 of the Agreement, awarding Pinnacle its reasonable attorneys' fees incurred in bringing this action.

C.        Awarding such other and further relief as the Court deems just and proper.

Dated:  October 22, 2018

        Respectfully submitted,

        KELLEY DRYE & WARREN LLP

        By:  /s/ William S. Gyves
              William S. Gyves
              Randall L. Morrison, Jr.
              101 Park Avenue, 27th Floor
              New York, New York 10178
              Tel.:  (212) 808-7800
              Fax: (212) 808-7897
              wgyves@kelleydrye.com
              rmorrison@kelleydrye.com

        Attorneys for Plaintiff